IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 26 2014

CLERK, U.S. DISTRICT COURT
By _____
            Deputy
```

| | | |
|---|---|---|
| STEVEN M. JOHNSON, PC, | § | |
| DBA THE JOHNSON LAW FIRM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:14-CV-613-A |
| | § | |
| PATRICIA MOULTON PARTEE, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Came on for consideration in the above action the combined motions of defendant, Patricia Moulton Partee, to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, and improper venue, or alternatively, to transfer venue. Plaintiff, Steven M. Johnson, PC, d/b/a The Johnson Law Firm, filed a response, and defendant filed a reply. Having considered all of the parties' filings, plaintiff's first amended original complaint, and the applicable legal authorities, the court concludes that this action should be dismissed because of the failure of plaintiff to establish the court's in personam jurisdiction over defendant.[1]

_____

[1]Although a federal court normally resolves doubts about its jurisdiction over subject matter before addressing personal jurisdiction, the United States Supreme Court has recognized that "there is no unyielding jurisdictional hierarchy." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 578 (1999). Because in personam jurisdiction is so clearly lacking here, that issue will be resolved first.

I.

## Nature of Litigation

Plaintiff alleged that subject matter jurisdiction exists by
reason of diversity of citizenship pursuant to 28 U.S.C. §
1332(a)(1) because the amount in controversy exceeds the sum or
value of $75,000, exclusive of interests and costs, and is
between citizens of different states.  Specifically, the amended
complaint alleged that plaintiff is a citizen of Texas and
defendant is a citizen of Minnesota.[2]  Although the amended
complaint discussed the basis of plaintiff's contention
concerning the amount in controversy, and also gave the reasons
plaintiff contended that venue was proper in the Northern
District of Texas, no specific statement of the court's in
personam jurisdiction is found in the amended complaint.

As to the factual allegations of the amended complaint,
plaintiff contended that defendant previously had a defective
product surgically implanted into her body, which defendant
claimed caused her personal injuries.  On or about September 30,
2010, plaintiff and defendant entered into a written contract

---

[2]This is likely to be a misprint, as defendant appears to be a citizen of the state of California, and
there is no indication she has any connection whatsoever with the state of Minnesota.

titled "Attorney Representation Agreement" ("Contract").[3]

The Contract provided for a contingent fee of forty percent of all sums recovered on defendant's claims, plus all costs and expenses advanced by plaintiff, and a lien on defendant's claims, proceeds, or judgments recovered in connection therewith.  On or about August 13, 2012, defendant sent written notice to plaintiff terminating plaintiff's representation under the Contract.

Plaintiff's amended complaint included an application to compel arbitration, and an alternative request for a declaratory judgment that plaintiff is entitled to recover forty percent of all sums recovered on defendant's claims related to the defective product.

## II.

### Grounds of Defendant's Motion

In her motion, defendant first asserted that this action should be dismissed because the court lacks personal jurisdiction over her.  Defendant additionally argued that subject matter jurisdiction is lacking because this action is not ripe for adjudication, and because plaintiff cannot establish the requisite amount in controversy.  Finally, defendant maintained that this action should be dismissed because venue is not proper

---

[3]The amended complaint refers to the Attorney Representation Agreement as the "Contract." For consistency, the court will do likewise.

in this district, or, if not dismissed, the action should be
transferred to the Northern District of Ohio where the multi-
district litigation panel has consolidated all cases involving
the alleged defective product that is the subject of defendant's
underlying claim.

III.

Analysis

A.   Law Applicable to Personal Jurisdiction

When a nonresident defendant presents a motion to dismiss
for lack of personal jurisdiction, the plaintiff bears the burden
of establishing that in personam jurisdiction exists. Wilson v.
Belin, 20 F.3d 644, 648 (5th Cir. 1994); Stuart v. Spademan, 772
F.2d 1185, 1192 (5th Cir. 1985).  The plaintiff need not,
however, establish personal jurisdiction by a preponderance of
the evidence; at this stage,[4] prima facie evidence of personal
jurisdiction is sufficient. WNS, Inc. v. Farrow, 884 F.2d 200,
203 (5th Cir. 1989); Wyatt v. Kaplan, 686 F.2d 276, 280 (5th Cir.
1982).  The court may resolve a jurisdictional issue by reviewing
pleadings, affidavits, exhibits, any part of the record, and any
combination thereof. Command-Aire Corp. v. Ontario Mech. Sales &
Serv., Inc., 963 F.2d 90, 95 (5th Cir. 1992). Allegations of the

---

[4] Eventually, plaintiff must prove by a preponderance of the evidence that jurisdiction exists.
See DeMelo v. Toche Marine, Inc., 711 F.2d 1260, 1271 n.12 (5th Cir. 1983).

plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits. <u>Wyatt</u>, 686 F.2d at 282-83 n.13 (citing <u>Black v. Acme Mkts., Inc.</u>, 564 F.2d 681, 683 n.3 (5th Cir. 1977)). Any genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a <u>prima facie</u> case exists. <u>Jones v. Petty-Ray Geophysical Geosource, Inc.</u>, 954 F.2d 1061, 1067 (5th Cir. 1992); <u>Bullion v. Gillespie</u>, 895 F.2d 213, 217 (5th Cir. 1990).

In a diversity action, personal jurisdiction over a nonresident may be exercised if (1) the nonresident defendant is amenable to service of process under the law of a forum state, and (2) the exercise of jurisdiction under state law comports with the due process clause of the Fourteenth Amendment. <u>Wilson</u>, 20 F.3d at 646-47; <u>Thompson v. Chrysler Motors Corp.</u>, 755 F.2d 1162, 1166 (5th Cir. 1985) (quoting <u>Smith v. DeWalt Prods. Corp.</u>, 743 F.2d 277, 278 (5th Cir. 1984)). Since the Texas long-arm statute has been interpreted as extending to the limits of due process,[5] the only inquiry is whether the exercise of jurisdiction over the nonresident defendant would be

---

[5] See, e.g., <u>Guardian Royal Exchange Assurance Ltd. v. English China Clays, P.L.C.</u>, 815 S.W.2d 223, 226 (Tex. 1991); <u>Schlobohm v. Schapiro</u>, 784 S.W.2d 355, 357 (Tex. 1990).

constitutionally permissible.  <u>Bullion</u>, 895 F.2d at 216; <u>Stuart</u>,
772 F.2d at 1189.

For due process to be satisfied, (1) the nonresident
defendant must have "minimum contacts" with the forum state
resulting from an affirmative act on the defendant's part, and
(2) the contacts must be such that the exercise of jurisdiction
over the person of the defendant does not offend "traditional
notions of fair play and substantial justice." <u>Int'l Shoe Co. v.
Washington</u>, 326 U.S. 310, 316 (1945) (quoting <u>Milliken v. Meyer</u>,
311 U.S. 457, 463 (1940)).

The minimum contacts prong of the due process requirement
can be satisfied by a finding of either "specific" or "general"
jurisdiction over the nonresident defendant.  <u>Bullion</u>, 895 F.2d
at 216.  For specific jurisdiction to exist, the foreign
defendant must purposefully do some act or consummate some
transaction in the forum state and the cause of action must arise
from or be connected with such act or transaction.  <u>Burger King
Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985).  Even if the
controversy does not arise out of or relate to the nonresident
defendant's purposeful contacts with the forum, general
jurisdiction may be exercised when the nonresident defendant's
contacts with the forum are sufficiently continuous and
systematic as to support the reasonable exercise of jurisdiction.

6

See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466
U.S. 408, 416 (1984); Perkins v. Benguet Consol. Mining Co., 342
U.S. 437 (1952).  When general jurisdiction is asserted, the
minimum contacts analysis is more demanding and requires a
showing of substantial activities within the forum state.  Jones,
954 F.2d at 1068.

The second prong of the due process analysis is whether
exercise of jurisdiction over the nonresident defendant would
comport with traditional notions of fair play and substantial
justice.  International Shoe, 326 U.S. at 316.  Once the
plaintiff establishes the existence of minimum contacts, the
defendant then has the burden to show that the assertion of
jurisdiction does not offend traditional notions of fair play and
substantial justice.  Asahi Metal Indus. Co. v. Superior Court,
480 U.S. 102, 113 (1987) (citing World-Wide Volkswagen Corp. v.
Woodson, 444 U.S. 286, 292 (1980)).

B.   Evidence Presented by the Parties on the In Personam Issue

     1.   Jurisdictional Facts in Defendant's Declaration

Defendant is a resident of the state of California, where
she has lived her whole life.  Defendant has never been to Texas
and has never conducted business in the state.

The underlying claim for which plaintiff is seeking fees
concerns a Johnson & Johnson DePuy ASR hip replacement implanted

in defendant in a hospital in Redding, California.   In or around
September of 2010, defendant was watching television in her home
in California and saw an advertisement for a lawsuit involving
the DePuy ASR hip replacement product.   Defendant called the
number given in the commercial and gave her information.
Defendant did not know where the law firm she called was located.

Soon thereafter defendant received an information packet
from plaintiff, which included the Contract.   Defendant was under
the impression that plaintiff was the sole or primary attorney
handling the class action against Johnson & Johnson, and that
plaintiff was the only attorney who could represent defendant in
that litigation.   Defendant signed the Contract at her home in
California around September 30, 2010, and returned it to
plaintiff by mail.

After defendant signed and returned the contract, she was
unaware of any legal work done on her behalf by plaintiff.   In
2012 defendant decided she could obtain better representation by
lawyers closer to her home in California, so she retained counsel
in California.   Defendant signed a written agreement with her new
counsel on or around March 1, 2012, and counsel sent a letter to
plaintiff terminating the representation.[6]   As of the date

---

[6]Through her new attorneys defendant later learned that two additional law firms other than

(continued...)

defendant signed the declaration, there has been no final
settlement in her case, and she has obtained no recovery as a
result of the litigation.

    2.   <u>Jurisdictional Facts in Plaintiff's Affidavit</u>

    In September 2010, defendant contacted plaintiff in Texas
regarding the DePuy ASR litigation and advised that she had
received a hip implant and had sustained injuries.  Plaintiff
sent defendant an intake packet.  On September 29 and 30, 2010,
defendant called plaintiff regarding her claim and related
medical information.  On September 30, 2010, defendant mailed her
completed packet, including the Contract, back to plaintiff in
Texas.  The Contract stated that it was entered into in Tarrant
County, Texas, included a Texas choice-of-law provision, and
provided that disputes over the Contract would be resolved by
arbitration in Fort Worth, Texas.

    On October 8, 2010, plaintiff mailed updated information to
defendant from Texas.  Defendant called plaintiff on October 11,
2010, regarding her case.  On October 11, 2010, plaintiff mailed
defendant a letter from Texas.  On October 12, 14, and 18, 2010,
defendant called plaintiff or sent plaintiff documents concerning

---

(...continued)
plaintiff were performing work on her behalf.  Defendant, however, never authorized work by either of
the firms.

her case.  Defendant called plaintiff on November 1, 2010, to provide additional medical information.  On November 23, 2010, January 13, 2011, and April 29, 2011, defendant again called plaintiff asking about the status of her claim.  On May 2, 2011, defendant called plaintiff regarding her concerns about sending her medical device to Texas.  On May 30, 2011, defendant mailed a medical records authorization to plaintiff.  On August 2, 2011, defendant sent another authorization form to plaintiff.

On December 23, 2011, February 29, 2012, and June 2, 2012, defendant again called plaintiff asking about the status of her claim.  On July 31, 2012, plaintiff called defendant to inquire about her condition and assist her in filling out certain forms.

From October 2010 through August 2012, plaintiff sent documents from Texas to defendant in California, and also called defendant on several occasions.  On June 5, 2012, plaintiff, through another attorney in California, filed suit on defendant's behalf in California.

Sometime in early 2012 defendant obtained a new attorney in California.  On August 13 and August 15, 2012, plaintiff received letters from defendant's new California counsel, terminating plaintiff's representation of defendant.

C.   <u>Application of the Law to the Facts of This Action</u>

Plaintiff is contending that the court has both specific and general jurisdiction over defendant.  However, plaintiff has failed to make the required showing as to either.

The court begins with a discussion of well-settled principles concerning the minimum contacts and specific jurisdiction.  It is well established that "[t]he unilateral activities of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."  <u>Patterson v. Dietze, Inc.</u>, 764 F.2d 1145, 1147 (5th Cir. 1985).  Likewise, "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction."  <u>Holt Oil & Gas Corp. v. Harvey</u>, 801 F.2d 773, 778 (5th Cir. 1986) (citing <u>Colwell Realty Invs. v. Triple T Inns</u>, 785 F.2d 1330, 1334 (5th Cir. 1986)); <u>Stuart</u>, 772 F.2d at 1192-93.

The exchange of communications between a resident and nonresident while developing a contract and the fact that a contract exists between the nonresident defendant and a resident of the forum state are also insufficient to establish the necessary minimum contacts.  <u>See</u>, <u>e.g.</u>, <u>Holt</u>, 801 F.2d at 778 (no specific jurisdiction over nonresident defendant who entered into a contract with a Texas resident, sent an agreement and checks to

Texas, and engaged in extensive telephonic and written communication with the plaintiff in Texas); Hydrokinetics, Inc. v. Alaska Mech., Inc., 700 F.2d 1026, 1029 (5th Cir. 1983) (exchange of communications between Texas and Alaska in the development of a contract insufficient to establish specific jurisdiction); Stuart, 772 F.2d at 1192-94 (finding no specific jurisdiction where nonresident defendant contracted with Texas residents, directed letters and phone calls to Texas, and shipped prototypes and products to Texas).

Application of the foregoing authorities to the facts now before the court make clear that plaintiff has failed to establish specific jurisdiction. The only contacts alleged between defendant and Texas pertained to plaintiff's attempt to secure a representation agreement with defendant and to obtain information from defendant to assist in filing a claim regarding her hip implant. Defendant's contacts with Texas were either to learn the status of her case from plaintiff, or to provide information to plaintiff. Defendant's contacts with Texas fall within the type that the Fifth Circuit has held insufficient to establish specific jurisdiction, and are even less than those in the above-referenced cases where specific jurisdiction was found lacking.

In support of his contention that specific jurisdiction

12

exists, plaintiff argued that defendant "purposefully consummated the Contract in Texas, and Plaintiff's claim arises directly from Defendant's breach of that Contract." Pl.'s Br. at 16. However, defendant in her declaration maintained that she signed the Contract in California, and plaintiff has adduced no controverting evidence. Indeed, plaintiff's affidavit is consistent with defendant's contentions, as plaintiff averred that defendant mailed the signed Contract from California to Texas. Nor does plaintiff explain how defendant purportedly breached the Contract, as it is undisputed that defendant has not yet received any settlement funds as a result of her participation in the DePuy litigation, so there is no fee to receive. And if plaintiff is contending that defendant breached the Contract by terminating the representation, he has directed the court to no provision therein prohibiting or in any way restricting defendant from doing so.

Plaintiff fares no better in attempting to show general jurisdiction, bearing in mind that the contacts necessary to establish general jurisdiction must be substantially greater than those necessary for specific jurisdiction. Plaintiff relies heavily on the number of contacts between he and defendant, as well as emphasizing that upon receipt of the various mailings from plaintiff, defendant had to know that plaintiff was located

in Texas.

     As an initial matter, it is undisputed that plaintiff,
through his television advertisement, reached out to defendant in
California.  This is not a case where defendant initiated contact
with plaintiff in Texas as a result of defendant's desire to
pursue litigation in Texas.  And nothing in plaintiff's affidavit
contradicts defendant's assertion that she was unaware of
plaintiff's location when she made the first phone call to
plaintiff.  From defendant's perspective, she could have been
calling anywhere in the United States, rather than purposefully
reaching out to Texas.  That plaintiff happened to reside in
Texas does not support in personam jurisdiction.  Holt, 801 F.3d
at 778.

     Nor do the raw number of contacts give the full picture of
defendant's purported contacts.  Many of the contacts were for
the purpose of providing information requested by plaintiff, many
were to learn the status of defendant's claim, and some were
initiated by plaintiff.  Plaintiff cannot rely on his own
contacts with defendant to establish the contacts necessary for
personal jurisdiction.  Plaintiff's contacts with defendant do
not show that defendant had continuous and systematic contact
with the forum state.  In any event, plaintiff's focus on the
number of contacts misses the point: the court is to be concerned

not with the number of contacts, but instead with the quality and nature of the activity pertaining to the forum state.  <u>Stuart</u>, 772 F.2d at 1194.  The quality and nature of defendant's contacts here are minimal, at best, and do not support the exercise of general jurisdiction over defendant.

Plaintiff also focuses on the Texas choice-of-law provision in the Contract as supporting general jurisdiction.  However, the Supreme Court noted that, although relevant, a choice-of-law provision "standing alone" would be insufficient to confer personal jurisdiction.  <u>Burger King</u>, 471 U.S. at 482.  The Court in <u>Burger King</u> found that the choice-of-law provision supported the exercise of <u>in personam</u> jurisdiction in conjunction with the numerous, substantive contacts with the forum initiated by the nonresident defendant, including the extensive negotiations between the parties, as well as the "20-year interdependent relationship" established by the parties' contract.  <u>Id.</u>

Nothing of the sort is alleged here.  It is undisputed that defendant was seeking an attorney to represent her in conjunction with a possibly defective hip implant; there was no prior relationship between the parties, no long-term "interdependent" relationship anticipated, and no other deliberate affiliations with Texas on the part of defendant as would cause her to reasonably anticipate being haled into a Texas court.  Nor was

anything in the Contract, including the choice-of-law and arbitration provisions, the result of arms-length negotiations between equally-situated parties, or any negotiations whatsoever.

All of the foregoing leads to but one conclusion: plaintiff has failed to show that defendant had sufficient contacts with Texas to establish the court's <u>in personam</u> jurisdiction over defendant. Accordingly, the court is dismissing this action for lack of personal jurisdiction.

                              * * * *

The court has considered the remaining grounds raised in the combined motions, and finds that they appear meritorious. However, given the court's disposition of this action as discussed above, the court finds it unnecessary to further address those grounds in this memorandum opinion and order.

                              IV.

                             <u>Order</u>

For the reasons given above,

The court ORDERS that defendant's motion to dismiss for lack of personal jurisdiction be, and is hereby, granted, and that all claims and causes of action asserted by plaintiff, Steven M. Johnson, PC, d/b/a The Johnson Law Firm, against defendant,

                              16

Patricia Moulton Partee, be, and are hereby, dismissed for lack of <u>in personam</u> jurisdiction.

SIGNED November 26, 2014.

_____

JOHN McBRYDE
United States District Judge